IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLUR WORLD, LLC,<br>Plaintiff,<br>v.<br>JMU DENTAL, INC.,<br>Defendant. | CIVIL ACTION<br>NO. 26-1982 |

**OPINION**

**Slomsky, J.** **July 30, 2026**

## I. INTRODUCTION

This case arises out of Defendant JMU Dental, Inc's ("Defendant") alleged trademark infringement and unfair competition for using Plaintiff Colur World, LLC's ("Plaintiff" or "Colur World") trademarks consisting of its "COLOR PINK Mark" and its "PINK NITRILE Mark" (collectively the "PINK Marks"). (See Doc. No. 1.) Defendant uses these trademarks to sell and market disposable exam-grade gloves made of nitrile for dental use. (See id.) Additionally, Defendant sold and marketed these products nationwide on its own website, as well as through Amazon, Net32, and eBay. (See Doc. No. 16-1 ¶ 3.)

As explained more thoroughly below, Defendant has filed a Motion to Dismiss the Complaint for lack of personal jurisdiction. (Doc. No. 10.) After consideration of the allegations in the Complaint and the arguments of the parties, rather than dismiss the Complaint, the Court will transfer the case to the Central District of California for two reasons: (1) this Court does not have specific personal jurisdiction over Defendant because its actions do not satisfy either the traditional "minimum contacts" test or the Calder "effects" test; and (2) jurisdictional discovery is

not appropriate because Plaintiff has not made a threshold showing that this Court may have specific personal jurisdiction over Defendant.

## II. BACKGROUND

### A. Factual Background

#### 1. The Parties

Plaintiff Colur World is a Delaware-based company that engages in selling pink medical and dental gloves which use its trademarked PINK Marks. (Doc. No. 1 ¶¶ 1, 11.) It is "the exclusive owner of all right, title and interest in and to a trademark" of (1) the pink color used on its gloves, and (2) the wordmark "PINK NITRILE." (Id. ¶¶ 8–9.) Since 2005, Plaintiff has sold the pink nitrile gloves and, since 2007, has licensed the right to use its color and wordmark to manufacturers and distributors. (Id. ¶¶ 11, 14.)

Defendant is a California corporation that manufactures dental supplies and equipment including exam-grade nitrile gloves. (Id. ¶¶ 2, 20.) Plaintiff alleges that Defendant has unlawfully adopted its color and wordmark in order to sell Defendant's own pink nitrile gloves through its website and other distributor websites such as Amazon.com in Pennsylvania. (Id. ¶¶ 21, 25, 27.) Plaintiff never consented to Defendant's use of its PINK Marks. (Id. ¶ 31.)

On December 29, 2025, Plaintiff sent a cease-and-desist letter to Defendant regarding its sale of the infringing products. Despite such notice, Defendant continues to use the PINK Marks without Plaintiff's authorization. (Id. ¶¶ 34–35.)

#### 2. Overview of Defendant's Sales

Defendant's Chief Executive Officer ("CEO"), Jianmin Yu, submitted two declarations describing Defendant's contacts with Pennsylvania. (See Doc. Nos. 10-1, 16-1.) Yu states that Defendant sells the allegedly infringing pink nitrile gloves through its own website and third-party platforms, including Amazon, eBay, and Net32. (See Doc. No. 16-1 ¶ 3.) According to Yu,

however, the only sales of the accused products to Pennsylvania customers were made through Amazon and Defendant's own website. (Id.)

Yu states that Defendant sold twenty-seven (27) boxes of the accused pink nitrile gloves through Amazon to Pennsylvania customers for a total of $215, representing 1.84% of Defendant's total Amazon sales of those gloves. (Doc. No. 10-1 ¶ 5.) Yu further states that Defendant sold an additional $192 worth of gloves through its own website to Pennsylvania customers. (Id.) According to Yu, Defendant's combined Pennsylvania sales through Amazon and its website account for 1.51% of its total sales of the accused pink nitrile gloves. (Doc. No. 16-1 ¶ 4.)

### B. Procedural Background

On March 26, 2026, Plaintiff filed its Complaint alleging trademark infringement (Counts I, III, and V), unfair competition (Counts II and VI), and injury to business or reputation and dilution of trademarks (Count IV). (Doc. No. 1.) On April 24, 2026, Defendant filed a Motion to Dismiss the Complaint for lack of personal jurisdiction. (Doc. No. 10.) On May 22, 2026, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss. (Doc. No. 13.) On June 12, 2026, Defendant filed a Response in Support of its Motions to Dismiss. (Doc. No. 25.) On July 8, 2026, the Court heard oral argument on the Motion to Dismiss and requested supplemental briefing on the issue. And on July 15, 2026, the parties filed supplemental briefs. (Doc. Nos. 20, 21.) The Motion to Dismiss is now ripe for disposition.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides that a motion to dismiss a complaint may be filed when the court does not have personal jurisdiction over a defendant. "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007) (citation omitted). To show personal jurisdiction, a plaintiff may rely on the allegations in the complaint, affidavits, or other evidence.

Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (internal quotation and citation omitted). However, to "survive a Rule 12(b)(2) motion to dismiss, a plaintiff may not merely rely on the allegations in its complaint." Deardorff v. Cellular Sales of Knoxville, Inc., No. 19-cv-2642, 2020 WL 5017522, *1–2 (E.D. Pa. Aug. 25, 2020) (emphasis in the original) (citation omitted). If the court "does not conduct [an] evidentiary hearing . . . [the] plaintiff need only plead [a] prima facie case" of jurisdiction to defeat a motion to dismiss. Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (citations omitted). In deciding a motion to dismiss for lack of personal jurisdiction, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Id. (citations omitted). However, if the court conducts an evidentiary hearing, plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence. Atiyeh v. Hadeed, No. 04-cv-2621, 2007 WL 853816, at *4 (E.D. Pa. Mar. 19, 2007).

## IV. ANALYSIS

A federal court may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the state in which the court sits. Fed. R. Civ. P. 4(e). Therefore, for this Court to properly exercise personal jurisdiction over Defendant, such jurisdiction must be conferred by Pennsylvania's long-arm statute. 42 Pa. Cons. Stat. Ann. § 5322. A court must then be satisfied that personal jurisdiction is appropriate under the Due Process Clause of the Fourteenth Amendment. See IMO Indus. Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). Under Pennsylvania law, this inquiry collapses into one step because Pennsylvania's long-arm statute authorizes courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause of the United States Constitution. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001).

Under the Due Process Clause of the Fourteenth Amendment, courts may exercise personal jurisdiction only in cases where a defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial

justice." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011). The minimum contacts requirement may be met through either of the two theories of personal jurisdiction: (1) general or (2) specific. O'Connor, 496 F.3d at 317. Because Plaintiff concedes that this Court does not have general jurisdiction[1], this Court will focus its analysis on whether there is specific jurisdiction.

**A. The Court Lacks Specific Personal Jurisdiction Over Defendant**

"In the absence of general jurisdiction, specific jurisdiction permits a court to exercise personal jurisdiction over a nonresident defendant for forum-related activities where the "relationship between the defendant and the forum falls within the 'minimum contacts' framework" of International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny." Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1122 (W.D. Pa. 1997) (citing Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1223 (3d Cir.1992)) (cleaned up).

The United States Supreme Court has articulated two tests for specific jurisdiction: (1) the traditional "minimum contacts" test and (2) the Calder "effects" test. See Hasson v. FullStory, Inc., 114 F.4th 181, 186 (3d Cir. 2024). Because Defendant argues that the Court lacks specific jurisdiction under either test, the Court will address each test, in turn, below.

---

[1] In so far as general jurisdiction is concerned, a court may exercise personal jurisdiction over a non-resident party when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (citations omitted). "For a corporation, 'the place of incorporation and principal place of business' are where it is 'at home' and are, therefore, the paradigm bases for general jurisdiction." Malik v. Cabot Oil & Gas Corp., 710 F.App'x 561, 563 (3d Cir. 2017) (citing Daimler, 571 U.S. at 127). Here, Defendant is incorporated in and has its principal place of business in California. (Doc. No. 10-1 at ¶ 2.) Furthermore, Plaintiff acknowledged that "Plaintiff does not argue that this Court has general jurisdiction over Defendant." (Doc. No. 13 at 7 n.3.) Accordingly, Defendant is not "at home" in Pennsylvania, and the Court, therefore, cannot exercise general personal jurisdiction over Defendant.

**1. The Court Does Not Have Specific Jurisdiction Over Defendant Under the Traditional "Minimum Contacts" Test**

The Third Circuit Court of Appeals has articulated a three-part traditional "minimum contacts" test to determine whether specific personal jurisdiction exists. First, "the defendant must have 'purposefully directed [its] activities' at the forum." O'Connor, 496 F.3d at 317 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). Second, "the litigation must 'arise out of or relate to' at least one of those activities." Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). Third, and finally, "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with "fair play and substantial justice."'" Id. (quoting Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945))).

Here, the crux of the dispute centers around the first prong—whether Defendant has purposefully availed itself of the privilege of conducting activities within Pennsylvania. Plaintiff argues that Defendant has purposefully availed itself of this forum for two reasons: (1) Defendant intends to develop a sophisticated national market to sell the infringing products; and (2) there are actual sales of infringing products into the forum. (See Doc. No. 13 at 20.) The Court will address each argument seriatim.

First, Plaintiff argues that Defendant's continuous efforts to expand its business show that it is targeting Pennsylvania. (See Doc. No. 13 at 9.) Specifically, Plaintiff's Vice President, Yvette Viva Saleh, testified the hearing that Defendant's brand story demonstrates that Defendant is expanding its sales in every state, including Pennsylvania, through online platforms, such as Amazon, eBay, and Net32. (See Doc. No. 22 at 45:4–23.) But this argument has been rejected by the Third Circuit Court of Appeals as a basis for specific jurisdiction. See Shuker v. Smith & Nephew, PLC, 885 F.3d 760, 780 (3d Cir. 2018) (holding that efforts "'to exploit a national market'

that 'necessarily included Pennsylvania' are insufficient to" to establish purposeful availment) (citing O'Connor, 496 F.3d at 317; D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 104 (3d Cir. 2009))). Plaintiff also argues that Defendant's attendance at various regional conferences demonstrates its efforts to market the infringing products to Pennsylvania customers. (Doc. No. 21 at 9.) But Plaintiff conceded at oral argument that these conferences did not take place in Pennsylvania. (Doc. No. 22 at 28:11–14.) Therefore, Defendant's conference attendance does not show that it purposefully availed itself of the Pennsylvania market. See J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 886 (2011) (holding that attendance at a trade show outside of a forum state indicates "intent to serve the U.S. market" rather than purposeful availment inside that forum state).

Thus, in the context of internet sales, more targeting is needed than just expanding sales in every state. Jurisdiction will exist when a defendant "directly target[s] the website to the state, knowingly interact[s] with residents of the forum state via its website, or through sufficient other related contacts." Burger King, 471 U.S. at 454. "When analyzing Internet commerce cases, 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the internet.'" Ackourey v. Sonellas Custom Tailors, 573 F. App'x 208, 211 (3d Cir. 2014) (quoting Zippo Mfg. Co., 952 F. Supp. at 1123–24). As part of its analysis, a court must consider "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." Zippo Mfg. Co., 952 F. Supp. at 1124.

Second, and in conjunction with the need for more targeting as noted above, Plaintiff argues that Defendant has purposefully availed itself of the Pennsylvania market by selling the accused products through Amazon and its own website. (See Doc. No. 13 at 18.) In support of its argument,

Plaintiff relies on Colur World, LLC v. Supmedic, Inc., where the Court found purposeful availment based on Amazon sales to Pennsylvania representing 3.4% of Defendant's total sales. 801 F. Supp. 3d 524, 533–35 (E.D. Pa. 2025). The court in Supmedic reasoned that this percentage reflected a quantifiable and representative portion of the defendant's sales and was indicative of regular and continuous business activity in Pennsylvania. Id. at 535. This Court cannot reach the same conclusion on the facts presented here.

Unlike the record in Supmedic, the evidence here reflects only limited sales of the accused products into Pennsylvania. Defendant's CEO, Jianmin Yu, states that Defendant sold only four units of the accused pink nitrile gloves to Pennsylvania customers, totaling $407 through Amazon and Defendant's own website and representing 1.51% of Defendant's total sales of the accused products. (Doc. No. 16-1 ¶ 4.)[2]

In any event, Defendant's Pennsylvania sales—four units totaling $407 and representing 1.51% of Defendant's sales of the accused products—do not demonstrate regular, continuous, and deliberate commercial activity that supported a finding of purposeful availment.[3] Rather, they

---

[2] Defendant argues that the present case is more similar to Colur World, LLC v. Schneider Med. Indus., where the Court likewise found no purposeful availment. 24-cv-1507, 2024 WL 3889620, at *3 (E.D. Pa. Aug 21, 2024). In Schneider, Defendant Schneider Medical Industries ("SMI") provided a declaration of its CEO who stated that it made eight sales for $485.93 through its own website to Pennsylvania customers. See id., (Doc. No. 9-2 ¶ 5). In Schneider, however, the Opinion of the Court did not identify the number of the defendant's Pennsylvania sales that involved the accused products. See id., (Doc. No. 9-2 ¶ 6) (noting in the record that SMI stated that "less than 3% of SMI's total sales of all products sold on Amazon.com were to Pennsylvania customers.").

[3] Plaintiff's disputes these figures and claims that Defendant's actual Amazon sales exceed the totals noted in CEO Yu's declarations. (Doc. No. 21 at 9.) Specifically, Plaintiff's Vice President, Yvette Viva Saleh, refers to data she downloaded from "Jungle Scout", a known "Selling Partner of Amazon." (Doc. No. 21-1 at 4.) According to its website, Jungle Scout has

reflect the type of "random, isolated, and fortuitous" activity insufficient to establish purposeful availment in a forum state. Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021); see also Supmedic, 801 F. Supp. 3d at 353 ("…intermittent or marginal sales via a virtual storefront intermediary, absent any other contacts, are insufficient to establish personal jurisdiction."); Philadelphia Indem. Ins. Co. v. Dreamershop Trade Ltd., No. 24-cv-1569, 2025 WL 2282567, at *3 (W.D. Pa. Aug. 8, 2025) (one sale–no purposeful availment); Flipside Wallets LLC v. Brafman Grp. Inc., No. CV 19-5356, 2020 WL 1330742, at *3 (E.D. Pa. Mar. 19, 2020) (seven sales–no purposeful availment). Holding otherwise would effectively subject Defendant to personal jurisdiction in every state where a customer happened to purchase its product through an online marketplace. The Third Circuit has rejected such an expansive view of personal jurisdiction, explaining that "[t]he mere operation of a commercially interactive web site should

---

"11 years of modeled data and sales estimates across thousands of Amazon subcategories." Jungle Scout, https://www.junglescout.com/about-us/ (last visited July 30, 2026). In her declaration, Saleh references the downloaded Jungle Scout data, which shows that Defendant's "most recent monthly sales nationwide of infringing pink nitrile gloves via Amazon" was $76,084.82. (Doc. No. 21-1 at 4–5); see also (id., Ex. B) (Jungle Scout data). Using the estimated $76,084.82 of nationwide sales, Saleh draws the conclusion that if 1.51% of Defendant's sales are in Pennsylvania, then this far exceeds the $407 reported by Yu. (Doc. No. 21-1 at 5.)

However, Plaintiff's relies on estimated nationwide sales data for the past month, which post-dates Yu's Declaration dated June 12, 2026, and does not reflect actual Pennsylvania sales during the relevant period. Plaintiff's assertion that Defendant's actual Pennsylvania sales must have exceeded the amounts stated in Yu's declaration are therefore estimates that are insufficient to undermine the reported number of actual Pennsylvania sales described by him.

Furthermore, at oral argument, VP Saleh urged the court to characterize Defendant's sales by the number of individual gloves, which she referred to as "eaches," rather than by the boxes in which they are sold. (See Doc. No. 22 at 27:5–20.) Plaintiff, however, acknowledged that the gloves are sold only in boxes, not individually. (Id. at 62:12–23.) The Court declines to measure Defendant's sales by individual gloves rather than by the units or boxes in which they are actually sold.

not subject the operator to jurisdiction anywhere in the world. Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454 (3d Cir. 2003). Because Defendant did not purposely direct its activities at Pennsylvania, this Court need not address the remaining two prongs of the traditional "minimum contacts" test to establish specific jurisdiction. Ford Motor Co., 592 U.S. at 352. Simply put, Defendant's contacts with Pennsylvania are insufficient to establish personal jurisdiction under the traditional "minimum contacts" test.

### 2. The Court Does Not Have Specific Jurisdiction Over Defendant Under the Calder "Effects" Test

"The Calder 'effects' test requires a plaintiff to plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." Hasson, 114 F.4th at 187.

Plaintiff argues that Defendant's conduct satisfies the Calder "effects" test because: (1) Defendant's actions were intentional after receiving Plaintiff's cease-and-desist letter; (2) Plaintiff and its primary licensee built the Pink Marks in Pennsylvania for over twenty (20) years; and (3) Defendant developed an expanding business model which intentionally sells the infringing products to a part of the relevant consuming market. (Doc. No. 13 at 14–15.) Conversely, Defendant argues that this test fails at the third prong because it did not "expressly aim" its alleged conduct at Pennsylvania. (Doc. No. 16 at 12.)

Regarding this third element, a defendant "expressly aim[s] ... tortious conduct at the forum" if it "manifest[s] behavior intentionally targeted at and focused on the forum." IMO Indus., Inc., 155 F.3d at 265. Plaintiff's contention that Defendant expressly aimed its conduct at Pennsylvania because it, despite receiving the cease-and-desist letter, continued to sell the infringing products into Pennsylvania is insufficient to confer personal jurisdiction. See FJD

Partners, LLC v. Stathoulis, No. 23-cv-3682, 2023 WL 8319958, at *3 (E.D. Pa. Dec. 1, 2023) ("Regardless, if the mere threat of legal action in a cease-and-desist letter could create personal jurisdiction, license holders would be encouraged 'simply to file suit in their home states rather than attempt to resolve their disputes without litigation,' which would not promote settlement or comport with the notions of fair play and substantial justice.") (citations omitted). Plaintiff's arguments that Defendant's attendance at trade shows along the east coast, as well making the infringing products available on third-party sites fare no better. As explained above, these actions demonstrate Defendant's efforts to exploit a national market, which is insufficient to confer personal jurisdiction. While Defendant has made some sales of pink nitrile gloves to Pennsylvania customers, this small percentage does not mean that Defendant "expressly aimed" its tortious conduct at Pennsylvania.

Therefore, this Court does not have specific jurisdiction over Defendant under the Calder "effects" test because Plaintiff fails to meet the requirements to satisfy the third prong of that test.[4] See Stern v. Aracari Project, 24-cv-1222, 2026 WL 412954, at *3 (E.D. Pa. Feb. 12, 2026) ("The Third Circuit has instructed that district courts need not consider the first two elements unless the 'expressly aimed' element is first met.") (quoting Williams v. Elliott, 18-cv-5418, 2020 WL 470308, at *5 (E.D. Pa. Jan. 29, 2020)).

**B. Jurisdictional Discovery is Not Appropriate in This Case**

Plaintiff alternatively requests that this Court allow jurisdictional discovery to oppose Defendant's efforts to dismiss the Complaint "specifically by authorizing discovery into all of Defendant's efforts to sell the Infringing Products into this forum, through its 'partners' and

[4] For this reason, no need exists to address prongs (1) and (2).

vendors, as well as any efforts Defendant takes to sell Infringing Products through those vendors or potential aliases." (Doc. No. 13 at 25.)

Jurisdictional discovery is appropriate "when the plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state[.]" Aldossari on Behalf of Aldossari v. Ripp, 49 F.4th 236, 259 (3d Cir. 2022) (citation and internal quotation marks omitted). But bare allegations alone do not justify jurisdictional discovery. Id.

Plaintiff's jurisdictional discovery request seeks to gain information regarding Defendant's sales efforts from its other partners and vendors. (Doc. No. 13 at 25.) However, Defendant provided declarations outlining the number of sales of pink nitrile gloves to Pennsylvania customers, effectively leaving nothing else to discover. [5] (See Doc. Nos. 13-1, 16-1.) Therefore, Plaintiff's request for jurisdictional discovery will be denied.

### C. The Court Will Transfer This Case to the United States District Court for the Central District of California

If a district court lacks jurisdiction over a matter, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court" where the action could have been brought at the time it was filed. 28 U.S.C. § 1631. Transfer under this section is appropriate where (1) the court lacks jurisdiction, (2) transfer is in the interest of justice, and (3) the action could have been brought in the transferee court at the time it was filed in this Court. While neither party requested

[5] The Court has carefully considered the declaration submitted by Yvette Viva Saleh, Vice President of Colur World. (Doc. No. 21-1.) According to Jungle Scout's website, the numbers in the declaration of potential sales in Pennsylvania are estimates and do not discredit Yu's declaration. (See https://www.junglescout.com/.) Merely contending that, in her experience, there had to be more sales in Pennsylvania is insufficient evidence to require jurisdictional discovery in this case. Additionally, Saleh continues to provide only estimates in her calculation of sales in Pennsylvania.

transfer in the alternative, the Court may transfer a case sua sponte. Schneider Med. Indus., 2024 WL 3889620, at *4 (citing Daniziger v. De Llano, LLP v. Mordan Verkamp LLC, 948 F.3d 124, 132 (3d Cir. 2020)).

The Court concludes it is in the interest of justice to transfer this case to the United States District Court for the Central District of California. First, as noted above, this Court lacks personal jurisdiction over Defendant. Second, transfer is in the interest of justice because "sound judicial administration counsels that cases should be transferred to districts where jurisdiction exists and venue is proper." Flipside Wallets LLC, 2020 WL 1330742, at *4 (citations omitted). Because Defendant is a California corporation with its principal place of business in Fullerton, California, the Central District of California may exercise general jurisdiction over Defendant. See Daimler, 571 U.S. at 137 (explaining general jurisdiction is generally based on a corporation's place of incorporation and principal place of business). Similarly, venue is appropriate due to Defendant's ties to California. See 28 U.S.C. § 1391(b) ("A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]"). Additionally, transfer promotes judicial efficiency because Plaintiff would have to refile this case in California if the Court dismissed it. Lastly, the action could have initially been brought in the Central District of California. Therefore, this case will be transferred to the Central District of California for further proceedings. Plaintiff is not precluded from pursuing their claim against Defendant; it just must be pursued in the Central District of California.

## V. CONCLUSION

For the foregoing reasons, this Court will transfer this case to the Central District of California. An appropriate Order follows.